IN THE CIRCUIT COURT OF THE 16ᵀᴴ JUDICIAL CIRCUIT
IN AND FOR MONROE COUNTY, FLORIDA

RICHARD E. WARNER & JOHN W. PARENTE,
as Co-Personal Representatives of the Estate of Joseph
Ardolino II, & JOSEPH E. ARDOLINO Individually
    *Plaintiff's*

General Civil Division
Middle Keys
Judge Becker

v.

CASE: 14-CA-185-M

CITY OF MARATHON, a political subdivision of the
State of Florida, MICHAEL CINQUE, individually and
as a City of Marathon official, & RALPH LUCIGNANO,
individually and as a City of Marathon official,
    *Defendants,*

SUMMONS: PERSONAL SERVICE ON AN INDIVIDUAL
ORDEN DE COMPARECENCIA: SERVICIO PERSONAL EN UN INDIVIDUO
CITATION: L'ASSIGNATION PERSONAL SUR UN INDIVIDUEL

TO/PARA/A:    **RALPH LUCIGNANO**
    MARATHON LIQUOR & DELI
    5101 Overseas Highway
    Marathon FL 33050

Date 9/4/14 Time 12:5P
Server STEVE FRAHLICH
MCSO #144
In good standing in the 16th Judicial Circuit,
Monroe County, Florida

THE STATE OF FLORIDA
TO EACH SHERIFF OF THE STATE: You are commanded to serve this summons and a copy of the
Complaint in this lawsuit on Defendant, Ralph Lucignano, the above named person.

DATED on : *8-15-14*
(SEAL)

CLERK OF THE CIRCUIT COURT

By: _____ As Clerk of the Court
    Deputy Clerk

**IMPORTANT**

    A lawsuit has been filed against you. You have **30 calendar days** after this summons
is served on you to file a written response to the attached complaint with the Clerk of this
Circuit Court, located at: Monroe County Courthouse, 3117 Overseas Highway, Marathon
FL 33050.

    A phone call will not protect you. Your written response, including the case number
given above and the names of the parties, must be filed if you want the Court to hear your side
of the case.

    If you do not file your written response on time, you may lose the case, and your
wages, money, and property may be taken thereafter without further warning from the
Court. There are other legal requirements. You may want to call an attorney right away. If
you do not know an attorney, you may call an attorney referral service or a legal aid office

(listed in the phone book).

If you choose to file a written response yourself, at the same time you file your written response to the Court, you must also mail or take a copy of your written response to the party serving this summons at:

*John P. Fenner, Esq. 2840 NW Boca Raton Blvd., Ste. 107, Boca Raton FL 33431.* FL Bar #0762938; jfennerlaw@att.net

**Copies of all court documents in this case, including orders, are available at the Clerk of the Circuit Court's office. You may review these documents, upon request.**

**You must keep the Clerk of the Circuit Court's office notified of your current address. Future papers in this lawsuit will be mailed to the address on record at the clerk's office.**

### IMPORTANTE

Usted ha sido demandado legalmente. Tiene 30 dias, contados a partir del recibo de esta notificacion, para contestar la demanda adjunta, por escrito, y presentarla ante este tribunal. Localizado en: Monroe County Courthouse, 3117 Overseas Highway, Marathon FL 33050. Una llamada telefonica no lo protegera. Si usted desea que el tribunal considere su defensa, debe presentar su respuesta por escrito, incluyendo el numero del caso y los nombres de las partes interesadas. Si usted no contesta la demanda a tiempo, pudiese perder el caso y podria ser despojado de sus ingresos y propiedades, o privado de sus derechos, sin previo aviso del tribunal. Existen otros requisitos legales. Si lo desea, usted puede consultar a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a una de las oficinas de asistencia legal que aparecen en la guia telefonica.

Si desea responder a la demanda por su cuenta, al mismo tiempo en que presente su respuesta ante el tribunal, usted debe enviar por correo o entregar una copia de su respuesta a la persona denominada abajo.

Si usted elige presentar personalmente una respuesta por escrito, en el mismo momento que usted presente su respuesta por escrito al Tribunal, usted debe enviar por correo o llevar una copia de su respuesta por escrito a la parte entregando esta orden de comparencencia a:

Nombre y direccion de la parte que entrega la orden de comparencencia: *John P. Fenner, Esq., 2840 NW Boca Raton Boulevard, Suite 107, Boca Raton FL 33431.*jfennerlaw@att.net

Copias de todos los documentos judiciales de este caso, incluyendo las ordenes, estan disponibles en la oficina del Secretario de Juzgado del Circuito [Clerk of the Circuit Court's office]. Estos documentos pueden ser revisados a su solicitud.

Usted debe de manener informada a la oficina del Secretario de Juzgado del Circuito de su direccion actual. Los papelos que se presenten en el futuro en esta demanda judicial seran env ados por correo a la direccion que este registrada en la oficina del Secretario.

### IMPORTANT

Des poursuites judiciaires ont ete entreprises contre vous. Vous avez 30 jours consecutifs a partir de la date de l'assignation de cette citation pour deposer une reponse ecrite a la plainte ci-jointe aupres de ce tribunal. Qui se trouve a: Monroe County Courthouse, 3117 Overseas Highway, Marathon FL 33050. Un simple coup de telephone est insuffisant pour vous proteger; vous etes obliges de deposer votre reponse ecrite, avec mention du numero de dossier ci-dessus et du nom des parties nommees ici, si vous souhaitez que le tribunal entende votre cause. Si vous ne deposez pas vos reponse ecrite dans le delai requis, vous risquez de perdre la cause ainsi que votre salaire, votre argent, et vos biens peuvent etre saisis par la suite, sans aucun preavis ulterieur du tribunal. Il y a d'autres obligations juridiques et vous pouvez requerir les services immediats d'un avocat. Si vous ne connaissez pas d'avocat, vous pourriez telephoner a un service de reference d'avocats ou a un bureau d'assistance juridique (figurant a l'annuaire de telephones).

Si vous choisissez de deposer vous-meme une reponse ecrite, il vous faudra egalement, en meme temps que cette formalite, faire parvenir ou expedier une copie au carbone ou une photocopie de votre reponse ecrite a la partie qui vous depose cette citation.

Nom et adresse de la partie qui depose cette citation: *John P. Fenner, Esq., 2840 NW Boca Raton Boulevard, Suite 107, Boca Raton FL 33431;* jfennerlaw@att.net.

Les photocopies de tous les documents tribunals de cette cause, y compris des arrets, sont disponible au bureau du greffier [Clerk of Circuit Court].  Vous pouvez revue ces documents, sur demande.

Il faut aviser le greffier de votre adresse actuelle.  Les documents de l'avenir de ce proces seront envoyer a l' adresse que vous donnez au bureau du greffier.

3

Filing # 17946600 Electronically Filed 09/08/2014 11:38:15 AM

## VERIFIED RETURN OF SERVICE

State of Florida                    County of Monroe                    Circuit Court

Case Number: 2014-CA-185-M

Plaintiff:
**Richard E. Warner & John W. Parente, as Co-Personal
Representatives of the Estate of Joseph ardolino II, & Joseph E.
Ardolino Individually**

vs.

Defendant:
**City of Marathon, a political subdivision of the State of Florida,
Michael Cinque, individually and as a City of Marathon official, &
Ralph Lucignano, individually and a City of Marathon official**

For:
Richard Warner, Esq.
Po Box 501317
Marathon, FL 33050

Received by THE WARREN AGENCY on the 15th day of August, 2014 at 2:00 pm to be served on **Ralph Lucignano, 5101 Overseas Highway, Marathon, FL 33050**.

I, Steve Frahlich, do hereby affirm that on the **4th day of September, 2014** at **1:25 pm, I:**

**Individually Served** the within named person with a true copy of this **SUMMONS AND 1ST AMENDED COMPLAINT WITH EXHIBITS** with the date and hour endorsed thereon by me, pursuant to State Statutes.

I certify that I am over the age of 18 & have no interest in the above action, am a Special Process Server, in good standing, in the 16th Judicial Circuit in and for Monroe County; that service was made in accordance with Florida Statutes 48.031. Under penalty of perjury, I declare that I have read the foregoing & that the facts stated in it are true. Notary not required pursuant to F.S.92.525(2).

**Steve Frahlich**
MCSO Appt. #144

THE WARREN AGENCY
2095 Dolphin Drive
Marathon, FL 33050-2801
(305) 289-9339

Our Job Serial Number: TWA-2014002093

Copyright © 1992-2011 Database Services, Inc. - Process Server's Toolbox V6.5n

## VERIFIED RETURN OF SERVICE

State of Florida                           County of Monroe                              Circuit Court

Case Number: 2014-CA-185-M

Plaintiff:
Richard E. Warner & John W. Parente, as Co-Personal
Representatives of the Estate of Joseph ardolino II, & Joseph E.
Ardolino individually

vs.

Defendant:
City of Marathon, a political subdifvsion of the State of Florida,
Michael Cinque, individually and as a City of Marathon official, &
Ralph Lucignano, individually and a City of Marathon official

For:
Richard Warner, Esq.
Po Box 501317
Marathon, FL  33050

Received by THE WARREN AGENCY on the 14th day of August, 2014 at 2:00 pm to be served on **City Of Marathon, Florida By: Mayor Richard Ramsay, 9805 Overseas Highway, Marathon, FL 33050.**

I, Steve Frahlich, do hereby affirm that on the **14th day of August, 2014 at 7:15 pm, I:**

Served a Government Agency by delivering a true copy of this **SUMMONS AND 1ST AMENDED COMPLAINT WITH EXHIBITS** with the date and hour of service endorsed thereon by me, to Richard Ramsay as Mayor of the within named agency, to wit: City of Marathon and informing such person of their contents.

**Additional Information pertaining to this Service:**
Served at City Council meeting, Marathon Fire Station, 8900 Overseas Highway, Marathon FL  33050.

I certify that I am over the age of 18 & have no interest in the above action, am a Special Process Server, in good standing, in the 16th Judicial Circuit in and for Monroe County; that service was made in accordance with Florida Statutes 48.031. Under penalty of perjury, I declare that I have read the foregoing & that the facts stated in it are true.  Notary not required pursuant to F.S.92.525(2).

Steve Frahlich
MCSO Appt. #144

THE WARREN AGENCY
2095 Dolphin Drive
Marathon, FL 33050-2801
(305) 289-9339

Our Job Serial Number: TWA-2014002070

Copyright © 1992-2011 Database Services, Inc. - Process Server's Toolbox V6.5n

IN THE CIRCUIT COURT OF THE 16TH JUDICIAL CIRCUIT
IN AND FOR MONROE COUNTY, FLORIDA

RICHARD E. WARNER & JOHN W. PARENTE,
as Co-Personal Representatives of the Estate of Joseph
Ardolino II, & JOSEPH E. ARDOLINO Individually
    *Plaintiff's*

General Civil Division
Middle Keys
Judge Becker

v.

CASE: 14-CA-185-M

CITY OF MARATHON, a political subdivision of the
State of Florida, MICHAEL CINQUE, individually and
as a City of Marathon official, & RALPH LUCIGNANO,
individually and as a City of Marathon official,
    *Defendants,*

Date _____ Time _____

Server _____ MCSO #144

STEVE FRAHLICH

In good standing in the 16th Judicial Circuit,

Monroe County, Florida

THE STATE OF FLORIDA
To Each Sheriff of the State

YOU ARE COMMANDED to serve this Summons and a copy of the Complaint in this
action on Defendant:

        CITY OF MARATHON, FLORIDA
        By: Mayor Richard Ramsay
        9805 Overseas Highway
        Marathon FL 33050

Each defendant is required to serve written defenses to the Complaint on:

        John P. Fenner, Esq., Plaintiff's Attorney, whose address is
        2840 NW Boca Raton Boulevard, Suite 107
        Boca Raton, Florida 33431
        (561) 750-5044, jfennerlaw@att.net
        Florida Bar No.: 0762938,

within 30 calendar days after service of this summons, exclusive of the day of service,
and to file the original of the defenses with the Clerk of this Circuit Court, Monroe
County Courthouse, 3117 Overseas Highway, Marathon FL 33050, either before service
on plaintiff's attorney or immediately thereafter. If a defendant fails to do so, a default
will be entered against that defendant for the relief demanded in the Complaint.

DATED: August 14, 2014

CLERK OF THE CIRCUIT COURT

By: _____
Deputy Clerk

IN CIRCUIT COURT OF THE 16th JUDICIAL CIRCUIT
IN & FOR MONROE COUNTY, FLORIDA

RICHARD E. WARNER & JOHN W.  General Civil Division
PARENTE, as Co-Personal    Middle Keys
Representatives of the Estate of Joseph  Judge Becker
Ardolino II, & JOSEPH E. ARDOLINO
Individually
   *Plaintiffs*,       CASE: 14-CA-185-M
v.

CITY OF MARATHON, a political
subdivision of the State of Florida,
MICHAEL CINQUE, individually and
as a City of Marathon official, &
RALPH LUCIGNANO, individually and
as a City of Marathon official,
   *Defendants*.

## 1st Amended COMPLAINT FOR DAMAGES (JURY TRIAL DEMANDED)

  Plaintiffs/Richard E. Warner and John W. Parente, as Co-Personal Representatives

of the Estate of Joseph Ardolino II (the "Estate") amend their Complaint (no responsive

pleading having been filed) and sue Defendants/City of Marathon (the "City"), Michael

Cinque, individually and as a City official ("Cinque") and Ralph Lucignano, individually

and as a City official ("Lucignano"), and Plaintiff/Joseph E. Ardolino ("Joe") sues Cinque,

Lucignano and the City, stating:

### Nature of the Action

  1. This is an action for damages to the Estate and to Joe in excess of $25,000, by

the City, Cinque and Lucignano, by their restraint of trade and conspiracy to monopolize,

temporary taking of Estate property, deprivation of the Estate's constitutional and civil

rights, tortuous interference with contractual and favorable business relationships, trespass

and conspiracy.

1

2.     Defendants wrongfully used the City's police and zoning powers, to harm the Estate and Joe, to benefit City officials' Cinque and Lucignano's private business interests.

3.     These wrongs damaged the Estate's Overseas property (the "Overseas") 3568–3574 Overseas Highway, Marathon, delayed its sale, and reduced its sales price.

4.     Joseph Ardolino II (Joe's father--"Joseph") owned the Overseas when he died on November 11, 2005.

5.     Joseph had operated the Overseas since the 1950s as a package liquor store and cocktail lounge, and apartment rentals.  Exhibit "A" shows the Overseas, labeled "The Overseas."

6.     Defendants had targeted the Overseas before Joseph died: (A) to eliminate it as competition with Lucignano's package store ("Marathon Liquors"); and (B) to depress the Overseas' value, so that Cinque could combine it with the abutting Stuffed Pig restaurant (the "Stuffed Pig", shown on Exhibit A and labeled "The Pig Property") where Cinque has an interest, and with another nearby property where Cinque also has an interest (the "Trailer Property"—labeled on Exhibit A, as "The Stuffed Pig Property Annex").

7.     After Joseph died in 2005, Defendants actively conspired to devalue and shut down the Overseas, and delay its sale, all to serve Cinque's and Lucignano's private business interests.

8.     Defendants conspired and used their official governmental powers to damage the Estate and Joe, in order to protect and benefit Cinque's and Lucignano's private business interests, and to retaliate against the Estate's attempts to defend its legal rights

2

and to sell the Overseas.

## The Parties

9. <u>Joe & The Estate</u>.  Plaintiffs are Joe, an individual and Joseph's son, and the Co-Personal Representatives of the Estate, administered in Case 16th Cir. #06-CP-14-M, Middle Keys Division.

10. <u>The City</u>.  At all relevant times, Defendant/City was a political subdivision of the State of Florida in Monroe County.

11. <u>Cinque</u>.  A. At all relevant times, Defendant/Cinque was a resident of Marathon, Monroe County, Florida, and a City official.

B.  Except where expressly excluded, Cinque was a member of the City Council, and served as Mayor from time to time.

C.  Cinque is an owner or manager of the Stuffed Pig and the Trailer Property.

12. <u>Lucignano</u>.  A.  At all relevant times, Defendant/Lucignano was a resident of Marathon, Monroe County, Florida, and a City official.

B.  Except where expressly excluded, Lucignano was a member of the City's Planning Commission.

C  At all relevant times, Lucignano owned Marathon Liquors, Inc., a Florida Corporation. which owns and operates Marathon Liquors ("Marathon Liquors"), a package store at 5101 Overseas Hwy., Marathon--approximately 1.5 miles east of the Overseas.

13.  At all relevant times, the Overseas was the sole Marathon package store west of Lucignano's Marathon Liquors.

3

## Jurisdiction and Venue

14. <u>Venue</u>. Joseph died a Monroe County resident, and the Estate is administered in this Court. The City is in Monroe County and the individual Defendants are Monroe County residents. All actions, acts and proceedings alleged herein, occurred in Monroe County, and most of those, within the City's boundaries.

15. All damages suffered by Plaintiffs occurred in Monroe County, so this Court has both subject matter and personal jurisdiction over this cause and all parties hereto.

16. Count III hereof is a civil claim under 42 U.S.C. §1983, for violations of the United States Constitution, so this Court has subject-matter jurisdiction under Fla. Stat. § 26.012.

## Factual Allegations Common To All Counts:

## Background; Cinque's & Lucignano's Motives to Devalue and Close the Overseas

17. From 2006 through the present, Cinque and Lucignano conspired with each other and with the City, to illegally impair and damage the Overseas' liquor lounge, package store and apartment rental business, in order to discourage potential buyers of the Overseas, all to benefit the City's favored <u>private</u> business interests—the Stuffed Pig and Marathon Liquors.

18. Before Joseph died in late 2005, Cinque had tried to buy the Overseas, but Joseph always refused to negotiate seriously with Cinque. This caused their relationship to become contentious.

19. Exhibit A hereto shows the Overseas' land, labeled as "The Overseas."

4

20.   The Overseas liquor store is *the last licensed liquor package store in Monroe Country heading west,* before the Seven Mile Bridge.  The next liquor store to the west is on Big Pine Key, 21 miles away.

21.   Cinque has had a substantial interest in the Stuffed Pig--just to the west of the Overseas, shown on Exhibit A, and labeled "The Pig Property."

22.   Cinque also has had a substantial interest in the Trailer Property northeast of the Overseas--several feet from being contiguous to the Overseas.  The Trailer Property is shown on Exhibit A and labeled "The Pig Property Annex."

23.   Cinque therefore had a great interest in buying the Overseas.  If he bought the Overseas, Cinque would need only to buy a narrow strip of land from one of the two remaining owners between the Trailer Property and the Overseas, to make all three properties "contiguous" for land-use purposes.  Under the City's land use ordinances, properties with greater acreage are entitled to greater density of development.

24.   Cinque's Motive to Devalue the Overseas.  A.  Buying the Overseas would make the Stuffed Pig and Trailer Property worth than they would be worth separately.

B.   Destroying the Overseas' right to conduct its liquor business at the site, would make the Overseas worth less, so Cinque could buy it cheaply, either directly from the Estate, or when it was auctioned off to pay the Estate's federal estate taxes.

24.   Lucignano's Motive to Close the Overseas.  A. The Overseas' package store is the sole licensed package store in Marathon west of Marathon Liquors, so the Overseas has had a direct and substantial competitive impact on Marathon Liquors' sales.

B.  For years there was no package store west of Marathon Liquors all the way to Big Pine Key 21 miles to the west—except for the Overseas.

25.  If the Overseas lost its liquor licenses at that location, or was put out of the liquor store or lounge business--or was even just limited in its package store business--this would greatly benefit Marathon Liquors and its owner Lucignano.  Lucignano so had a clear motive to see to the Overseas' liquor store's demise--eliminating all competition on the west end of Marathon.

26.  For seven years, Cinque and Lucignano abused their public offices, conspiring between themselves and with the City, to wrongfully use the City's police powers for their private benefit.

## CINQUE's ILLEGAL TRENCH & SEWER LINE ACROSS OVERSEAS LAND Winter & Spring 2005-2006

27.  In December 2005, a few weeks after Joseph died, Cinque dug and installed a sewer line across the Overseas land--beginning from his Stuffed Pig property, across the Overseas land, across a public easement and then to his Trailer Parcel.  The general position of this illegal sewer line is shown on Exhibit A and labeled "Cinque Sewer Line."

28.  Cinque did this, without notice to, knowledge of, or consent or permission from, and without paying anything to the Estate, for so using its land.

29.  Furthermore, Cinque did not have the consent, permission or authority of any governmental agency holding title to the public land where he dug his sewer trench.  The line traversed both the Overseas and a governmentally-owned right-of-way.

6

30. Neither owner knew about this trespass.  This gave Cinque another motive to acquire the Overseas, so that no one would discover his illegal sewer line.

31. Cinque's illegal sewer line allowed the Stuffed Pig to avoid the City's Sewer Hookup requirement, but it was a wrongful trespass over the Estate's and public lands.

32. Though the City may have issued Cinque a permit (the "Permit") to install the sewer line, neither the Estate nor the government owning the public land, ever signed the Permit's Application.

33. Instead, to get his Permit, according to the City, Cinque represented to the City that he had "an easement" from Joseph or the Estate as owner, to install the sewer line-- assuming he applied at all for the Permit.

34. Under Florida law, this type of granted easement must be created by a written deed or grant, signed by the owner, with two witnesses.

35. Cinque could not produce such an easement document, but the City never made him do so.  So the City wrongfully issued Cinque his Permit--if it issued one at all.

36. The City claims to have issued the Permit, but has never produced a copy to the Estate, though the Permit would be a public document under the Florida Government in the Sunshine Act.

37. In 2008, the Estate applied to have the City abandon the old Route 4A right of way, running through the Overseas land and adjoining lands, and the City agreed to do so.

38. The City Council's May 23, 2008 meeting led to the City's adopting its final October 28, 2008 Resolution 2008-44 (Exhibit "B"), to abandon the Old 4A right of way

7

running through the Overseas land, in favor of the Estate.

39. The City Council's May 23, 2008 discussions did not refer to Cinque's secret trench and sewer line. The City preliminarily voted to abandon the right-of-way, subject only to the Estate granting a routine public utility easement to the City, and surface access easements to adjacent owners.

40. Nonetheless, the City's final October 28, 2008 Resolution to abandon the right of way, inserted the following additional condition, without notice to the Estate:

> **3. The applicants** [the Estate] **will grant an easement recognizing the existing sewer line from the Stuffed Pig restaurant until it is replaced by city sewer.** [emphasis supplied]

41. The City had never mentioned Cinque's "easement" or "sewer line" before.

42. When the Estate refused to comply with the City's private easement demand, and only granted the public utility easement to the City and access to adjacent owners, the City abruptly abandoned its enacted condition for the Estate to recognize Cinque's "existing sewer line".

43. The City's demand that the Estate *recognize* this private sewer line by granting "an easement" shows the City's guilty knowledge that it wrongfully issued the Permit--if it issued one at all. It was an affirmative act to further Defendants' conspiracy to use public powers to damage the Overseas, the Estate and Joe, for private purposes and private gain.

### Death Threat Against Estate Beneficiary–Spring, 2006

44. In Spring 2006, another Estate beneficiary told Personal Representative/Richard Warner that men that she believed to be involved with, or sent by, Lucignano and/or

Marathon Liquors, approached her.  These men demanded that the Overseas shut down its package store and liquor lounge businesses.  They credibly threatened death or severe physical injury to the other Estate beneficiary, if she and the Estate did not comply.

### The City Adopts Targeted Limitations On Package Stores  2006 & 2007

45.  In October 2006, the City secretly amended its Zoning Ordinance by Ordinance 2006-25 ("Exhibit "C")to prohibit package liquor sales within 1,500 feet of any school <u>and</u> within that same distance from any existing package liquor store (the "1,500 Foot Limit").

46.  The Overseas is slightly-less than 1,500 feet from Stanley Switlik Elementary School (the "School") in Marathon.  The Overseas was the only package store in Marathon closer than 1,500 feet to a school.

47.  There was no popular demand or campaign to require this unique, specialized and targeted 1,500 Foot Limit on package stores.  The Overseas had operated its package store for decades.  Keys Fisheries & Marina sold on-premises liquor even closer to the School than the Overseas.  Instead, this proposal came from the City Council and the City's Planning Commission--where Cinque and Lucignano sat.

48.  <u>The City Secretly Changes its Zoning</u>.  The City failed to give required statutory notice of Ordinance 2006-25 to affected owners, including the Estate.  Marathon Municipal Code ("Code") §108.09 required the City to mail written notice of the proposed Ordinance to the Estate, but the City gave the Estate no written notice.

49.  In 2007, the City updated its Land Development Regulations ("LDRs") by Ordinances ##2007-003 & 2007-014—again without giving the Estate any written notice.

9

50. New City Code §104.05(G) 1 (b) & (c) codified all the above Ordinances (the "Ordinances"), prohibiting package stores within 1,500 feet of a school.

51. Until this Court overturned the Ordinances and new Code Sections on appeal, the Ordinances and new Code §104.05(G) made the Overseas' liquor store "a non-conforming use". This greatly reduced the price the Estate could get for the Overseas and delayed its sale, damaging the Estate and damaging Joe, who was forced to pay property taxes on the Overseas for two years, while its sale was delayed.

52. Through these secret, overt acts, the City conspired with Cinque and Lucignano, from 2006 to the Overseas' sale in 2013, to target, depress and damage the Overseas by making it "a nonconforming use" without notice to the Estate, and by other actions and inactions by other City officials.

### Cinque Tries to Buy the Overseas in 2007

53. In the fall of 2007, Cinque made an oral offer of $600,000 to purchase the Overseas, to Personal Representative Richard E. Warner.

54. The Estate rejected this offer because it was in 2007. The Overseas was originally listed for sale at $1,000,000.

55. Shortly thereafter, Cinque told Joe that Cinque would buy the Overseas cheaply later, when the Overseas would be "sold for taxes." Cinque and Lucignano were highly-motivated, and had enough "influence" with the City, to make that happen.

56. In March 2008, the tenant of the Overseas did not extend its lease and left the premises at the end of the lease term.

57.  Thereafter, the Estate did not abandon the Overseas, but pursued many avenues of improvement, to lease and sell it, as part of the Estate's administration.  The Estate engaged a real estate broker--American Caribbean Realty of Marathon, Florida, through its agent Brenda Tarella ("Tarella")—to sell the Overseas.

58.  On March 25, 2009, to find out if the Overseas had any land-use issues, Tarella contacted the City's Planning Director/George Garrett ("Garrett").

59.  Tarella asked Garrett about all land-use issues for the Overseas.

60.  When Tarella specifically asked Garrett and his staff if there were any limitations on the Overseas' intended uses as package store and liquor lounge, Garrett and his staff said nothing on that subject.

61.  Garrett and his staff discussed many other details of limits on the Overseas, but they failed to mention any City package store and liquor lounge restrictions, though the Ordinances and their 1,500 Foot Limit had been in place for more than two years.

62.  This omission continued the City's concealment of the secret Ordinances, and their 1,500 Foot Limit.

63.  The $750,000 Offer.  Relying on Garrett's misrepresentations, on June 10, 2011, Tarella produced a $750,000 cash offer ("$750,000 Offer"--Exhibit "D") for the Overseas, from a ready, willing and able buyer ("Foster").

64.  Only then did Garrett finally tell the Estate and Tarella about the City's 1,500 Foot Limit.  On July 27, 2011, the City's Planning Director/Garrett, wrote (Exhibit "E") to refuse to allow the Overseas to transfer its liquor licenses to Foster.

11

65. Garrett's July 27, 2011 letter claimed the Overseas was "abandoned" and so was "nonconforming", because it was less than 1,500 feet from a school.

66. Until this Court overturned the Ordinances in 2012, the City prohibited the Overseas' existing package store and lounge businesses, at its favorable site. This was an un-constitutional, uncompensated, temporary taking of the Overseas' property for private purposes.

67. The Estate objected because the Overseas was not abandoned and the Estate had received no notice of the Ordinances imposing the 1,500 Foot Limit. The City denied those objections and prohibited transferring the package store use and license to Foster.

68. The Estate appealed the City Planning Director's letter, to the Marathon City Planning Commission, where Lucignano sat as a voting member. Lucignano refused to recuse himself and voted against the Estate. The City which affirmed Garrett's letter and denied the appeal.

69. The Estate then appealed to the Marathon City Council, where Cinque sat as a member and Mayor. Cinque refused to recuse himself for conflict of interest, and the City Council voted against the Estate in September 2011.

70. So the Estate had to appeal this ruling to this Court, by a *certiorari* petition.

71. On June 29, 2012, this Court ruled, reversing all of the City's rulings. This final order (Exhibit "F") granted *certiorari*, and reversed the 1,500 Foot Limit for the Estate.

72. Ironically, because of that ruling, the Stuffed Pig later applied to the City, and was granted City permission, to serve alcoholic beverages in the Stuffed Pig--even though

12

it is closer to the School than the Overseas.

73.   During the nearly five years that City wrongfully used the void 1,500 Foot Limit against the Estate, the Overseas was the only pre-existing package store the Ordinances affected.

74.   During that time, City officials told potential buyers of the Overseas that the Overseas would <u>not</u> be grandfathered in its lounge and package store uses, because of the 1,500 Foot Limit.

75.   All Defendants thus intermeddled with Estate assets as *executors de son tort*.

76.   <u>Damages</u>.   This devastated the market for the Overseas.   During the Great Recession, the longer the Overseas' sale was delayed, the more Keys' real estate prices declined, and the more the Estate's unpaid estate taxes accrued additional interest.

77.   <u>Joe's Damages</u>.   To keep the Overseas from being "sold for taxes" (in Cinque's words), Joe voluntarily paid part of the Overseas' real property taxes, while Defendants wrongfully delayed its sale.   The Estate has not been able to reimburse Joe for this.

78.   <u>Motives</u>.   If the Overseas could not be sold, because of the City's open hostility, Cinque could buy the Overseas cheaply, and Lucignano could eliminate his competitor.

79.   <u>Foster Gives Up</u>.   As a direct result of the City's stated position on the liquor store, and its open hostility to the Overseas, and the great delay in closing, Foster withdrew his $750,000 Offer, and this sale failed.

80.   <u>Specific Damages to the Estate</u>.   The secret Ordinances cost the Estate the difference between Foster's $750,000 Offer and the Overseas' final 2013 selling price of

$475,000, plus the Overseas' operating and maintenance costs, real estate taxes, the Estate's legal fees to fight the Ordinances and the Defendants' other wrongful actions, and additional interest the Estate incurred to the IRS, from its inability to pay Estate Taxes, all during the time the City prevented a sale.

**Additional Damaging Actions by Defendants Against the Estate through 2013**

81. Since Joseph died in 2005, the City's building inspection officials repeatedly trespassed on the Overseas and harassed the Estate's staff--usually without immediate prior complaint and without any search warrant or other legal authority.

82. City inspectors often "red-tagged" parts of the Overseas, without warning, without sufficient justification and without proper authority to be on the property. They repeatedly trespassed, in a pattern of harassment to help keep the Estate from selling the Overseas to a buyer who could compete with Lucignano and Cinque in the alcoholic beverage and restaurant businesses.

83. Many of the searches of the Overseas by City officials violated Florida law, and the Fourth Amendment of the US Constitution.

84. <u>Interference With the Overseas' Regulators</u>. From 2007 through 2012, City officials contacted Florida alcoholic beverage authorities (the "Regulators") to interfere with the Estate's beverage licenses, impugning their validity and damaging their value to the Estate, and to any potential buyer.

85. As a result of the wrongful actions of the City, Lucignano, Garrett and Cinque between 2006 and 2012, the Estate could not find a buyer for the Overseas at a price that

14

would pay all of the Estate's taxes, expenses and costs.

86. This delay in finding a buyer caused the Overseas' selling price to decline even further, as the Marathon commercial real estate market deteriorated in 2008-2011.

87. After this Court struck down the 1,500 Foot Limit in July 2012, the Estate finally found another buyer for the Overseas in mid-2013. This buyer contracted (the "O'Connell Contract") to buy the Overseas for its eventual 2013 selling price of $475,000.

88. Nonetheless, from the time of the O'Connell Contract on May 13, 2013, the City, Cinque, Garrett and Lucignano still continued to interfere with, and hinder, that sale, by raising many unnecessary and wrongful administrative impediments.

89. In August and September of 2013, the City, at Lucignano's and Cinque's instigation, intentionally tried to block the Estate's closing under the O'Connell Contract, by Garrett's requiring unprecedented actions by the Estate and the buyer, which were arbitrary and capricious, and thus intended to prevent the closing.

90. The City used these unusual and unnecessary demands and technicalities, to try to prevent the O'Connell Contract's closing and to destroy the Estate's benefit of the transaction.

91. The City also imposed improper conditions and procedural impediments to the transfer of real property and alcoholic beverage permits.

92. The City even made a title objection to the Overseas' property's title. This was far beyond the scope of the City's role or official interest in the closing.

93. The City's last-minute attempts to block the sale forced the Estate to again

15

successfully petition this Court's Probate Division, to stop the City's wrongful attempts to stop the sale under the O'Connell Contract. This caused the Estate unnecessary fees.

94. All conditions precedent to this lawsuit to be performed by the Estate or by Joe— including the six-month notice by the Estate, required by Fla. Stat. §768.28--have occurred or have been performed.

95. The Estate and Joe have had to hire counsel, and have agreed to pay their counsel, reasonable fees for their services.

**Count I--Conspiracy to Monopolize (FS §542.19 & Sherman Act)-All Defendants**

The Estate sues Cinque, Lucignano and (to the extent permitted by Fla. Stat. 542.235(2)and the Sherman Act, hereinafter defined) the City, for conspiracy to monopolize the package liquor store business in Marathon, in violation of Fla. Stat. 542.19 and the United States Sherman Antitrust Act of 1890, as amended (the "Sherman Act", all collectively, the "antitrust laws").

96. The Estate incorporates by reference the above allegations in Paragraphs 6, 8, 11, 12, 13, and 17 through 95 hereof.

97. Beginning in January 2006 and continuing to the present time, the Defendants and others have entered into a continuing agreement, understanding and concert of action with the purpose and effect of restricting competition and maintaining a monopoly or near-monopoly of the alcoholic beverage package store market in Marathon.

98. Defendant Lucignano and his Marathon Liquors have market power in the package store business in Marathon. By and through the enactment and attempted

16

enforcement of Code §104.05 (G), all Defendants in conspiracy have had, and continue to have, a substantially adverse effect on the competitive conditions in the package liquor business in Marathon, by effectively preventing competitive entry or continued competition, in violation of Fla. Stat. §542.19 et al.

99. Defendant City, by enacting and trying to enforce the 1,500 Foot Limit, damaged the Estate and gave Lucignano and his Marathon Liquors a monopoly or near-monopoly over the sale of package store products in central and west Marathon.

100. By allowing only one favored package store to sell liquor in a small commercial community as the Overseas Highway corridor in Marathon, the City has unconstitutionally deprived other in-state and of-of-state businesses of access to a local market, in violation of the federal Commerce Clause of the U.S. Constitution.

101. The economic effects of Defendants' conduct are interstate in reach. A very large portion of the tourists who visit Marathon and do business there, have traveled from other states and other countries. By forcing tourists to pay uncompetitive prices to Lucignano and his Marathon Liquors, and by preventing the Estate and other businesses from competing with the favored local operator, the City has driven up the prices paid by consumers of package store goods in Marathon.

102. The City's actions have prevented other businesses in Marathon from purchasing package store products from other states of the United States. The City's conduct has therefore impermissibly burdened and restricted the free flow of interstate commerce.

103. The City acted under color of State law and has deprived the Estate of rights, privileges and immunities secured to it by the United States and Florida Constitutions.

104. As a direct and proximate result of Defendants' unlawful conspiracy to restrict competition, the Estate has been injured in their business and property. The Estate's injury is injury of the type the antitrust laws were designed to prevent and flows from that injury which makes Defendants' acts unlawful.

105. The conduct of the City and its officials, alleged above, bears no reasonable relationship to the health, safety or welfare of the citizens of Marathon.

106. The actual or potential anticompetitive effects of such conduct far outweigh any public health benefits of the conduct. The 1,500 Foot Limit damaged the Estate and was detrimental to the interests of Marathon's citizens, but only protected the private anti-competitive business interests of Lucignano, his Marathon Liquors, Cinque, and his restaurant and (now) alcoholic beverage business, the Stuffed Pig.

107. Accordingly, the Defendants violated the antitrust laws, injuring the Estate.

**Count II—"As Applied" Inverse, Temporary Condemnation—the City**

The Estate sues the City under the Fifth Amendment to the United States Constitution (the "5th Amendment") and Article X, §6 of the Florida Constitution, for taking the Estate's property without compensation. The Estate sues under 42 USC §1983.

108. The Estate incorporates by reference the above allegations in Paragraphs 6, 8, 11, 12, 13, and 17 through 95

109. The City's acts to take the Estate's property without compensation were

18

performed under color of law—the permanent Ordinances which the City adopted, and its position that the Overseas had abandoned its liquor store and lounge uses at the Overseas.

110. The property taken from the Estate was its right to conduct its liquor store and lounge businesses at the Overseas, an extremely-favorable location.

111. The Estate had vested rights to conduct its package store and lounge businesses at the Overseas, but the City never tried to use its eminent domain powers to take the Estate's property. The City's Ordinances and other actions temporarily deprived the Estate of those vested rights, without compensating the Estate.

112. The Ordinances were not enacted for any public purpose, but were enacted to benefit Cinque and Lucignano's private interests.

113. The Estate exhausted its administrative remedies, by having this Court declare that the Ordinances were invalid as to the Estate, but that took much time, during which the Estate could not conduct its package store or lounge businesses, and the commercial real estate market in Marathon declined further.

114. The City's actions violated the 5th Amendment (incorporated to apply to the City, by the 14th Amendment to the US Constitution), and violated Article X, §6 of the Florida Constitution, damaging the Estate.

### Count III- 42 USC §1983 Claim; Violation of Estate's Civil Rights--All Defendants

The Estate sues all Defendants, in their official roles (including the City, but not for enacting the Ordinances), under 42 USC §1983, for intentionally, maliciously and wrongfully, depriving the Estate of its civil rights, and conspiring to do so.

19

115. The Estate incorporates by reference the above allegations in Paragraphs 6, 8, 11, 12, 13, and 17 through 95.

116. The rights that Defendants deprived the Estate of, were the rights to own and conduct legal package store and lounge businesses on its property, and the right to sell these businesses and the Estate's other property together.

117. The City and its agents, and Cinque and Lucignano, acted under color of State and local law. In so acting, Defendants deprived the Estate of rights, privileges and immunities secured to it by the United States and Florida Constitutions.

118. All Defendants were aware of the Estate's rights, and intentionally violated those rights, with the conscious intent, and goal, of harming the Estate and its property, for improper motives.

119. Defendants are civilly liable under 42 U.S.C. §1983, because they violated the United States and Florida Constitutions by depriving the Estate of equal protection under law, due process of law and their civil rights guaranteed by the United States and Florida Constitutions.

120. The City is liable because it intentionally, by its authorized agents:

A. failed to give the Estate its legally-required prior notice of the Ordinances;

B. concealed the Ordinances from the Estate's agent/Tarella; and

C. continued to try to enforce the Ordinances, even after they had been invalidated, and the time to appeal had run, requiring another proceeding in this Court.

### Count IV--Tortuous Interference with Contract Rights

20

The Estate and Joe sue all Defendants (including the City, but not for enacting the Ordinances), for intentionally, maliciously and wrongfully, interfering with Foster's contract to buy the overseas for $750,000 ("Foster's Contract"), and conspiring to do so.

121.  Plaintiffs incorporate by reference the above allegations in Paragraphs 6, 8, 11, 12, 13, and 17 through 95.

122.  Defendants intentionally interfered with the contractual relationship between the Estate and Foster, in Foster's Contract, for him to buy the Overseas for $750,000.

123.  The above alleged intentional interference by all Defendants proximately damaged the Estate and Joe.

### Count V--<u>Tortuous Interference with Advantageous Business Relationships</u>

The Estate and Joe sue all Defendants (including the City, but not for enacting the Ordinances), for intentionally, maliciously and wrongfully, interfering with the Estate's advantageous business relationships with the Regulators and with potential buyers in listing the Overseas for sale, and conspiring to do so.

124.  Plaintiffs incorporate by reference the above allegations in Paragraphs 6, 8, 11, 12, 13, and 17 through 95.

125.  Defendants intentionally interfered with the proposed sale of the Overseas:

A. by publicizing the Ordinances to buyers, and telling the Estate's broker Tarella, about it;

B. by making it known to the real estate community that the City was hostile to the Overseas' operation as a package store and lounge; and

C. by contacting the Regulators, to interfere with the Overseas' licenses.

21

126. Defendants' intentional interference by all Defendants proximately caused damage to the Estate and Joe, specifically, because other buyers were discouraged from purchasing the Overseas, and from the resulting delay in selling the Overseas, at a lower sales price.

### Count VI—Executor De Son Tort Under FS 733.309

The Estate sues all Defendants (including the City, but not for enacting the Ordinances), for intentionally, maliciously and wrongfully, intermeddling with the Estate's property, and conspiring to do so.

127. The Estate incorporates by reference the above allegations in Paragraphs 6, 8, 11, 12, 13, and 17 through 95.

128. Defendants intentionally intermeddled with the Estate's property.

129. The above alleged intentional intermeddling by all Defendants proximately caused damage to the Estate, in violation of Fla. Stat. 733.309, as *executors de son tort.*

130. This Count is a good-faith attempt to claim under Fla. Stat. 733.309 in a civil lawsuit, with a reasonable expectation of success.

### Count VII—Trespass--Cinque

The Estate sues Cinque for intentional trespass on the Estate's land.

131. The Estate incorporates by reference the above allegations in Paragraphs 6, 8, 11, 12, 13, and 17 through 95.

132. Cinque trespassed against the Estate's real property, by running the Stuffed Pig's trench and sewer line across it.

22

133. Such trespass damaged the Estate's real property without permission, and without compensating the Estate for such trespass.

134. Accordingly, Cinque is liable to the Estate for all damages from such trespass, and is further liable to the Estate for the financial benefit obtained by Cinque and related entities, from such trespass.

### Count VIII--Conspiracy--All Defendants, for Counts I, III, IV, V & VI

The Estate, and Joe for counts IV and V, sue Defendants (including the City, but not for enacting the Ordinances) for conspiracy to commit the wrongs described in Counts I, III, IV, V & VI.

135. Plaintiffs incorporate by reference the above allegations in Paragraphs 6, 8, 11, 12, 13, and 17 through 95, and in Counts I, III, IV, V & VI.

136. For different though overlapping motives, Defendants conspired to commit such wrongs against the Estate and Joe (for Counts IV and V).This enhanced the damages that Plaintiffs suffered.

### Prayer for Relief

WHEREFORE, the Plaintiffs pray for judgment against the Defendants and for the following relief:

A. As to the Defendants/City, Lucignano and Cinque, under Count I, a judgment for three times the amount of damages actually suffered by the Estate, as determined by a jury;

B. As to the Defendant/City under Count II, a judgment for the damages actually suffered by the Estate, as determined by a jury;

23

C. As to all Defendants under Counts III, IV, V, VI and VIII, actual damages as suffered by the Estate and by Joe (for Counts IV and V) in the loss and diminution of the value of the Overseas caused by all Defendants, and for damages caused to the Estate by Defendants as executors de son tort, except (in the case of the City) damages from the City, caused by the City's enacting the Ordinances;

D. As to Cinque under Count VII, the damages suffered by the Estate, plus the value to Cinque's related entities from such trespass;

E. Pre-Judgment and post-judgment interest as allowable by law;

F. Reasonable attorneys' fees under: the antitrust laws (for Count I); and under 42 USC §1988(b) (for Counts II and III), and all costs of suit; and

G. All other and further, appropriate relief.

### Demand for Jury Trial

Plaintiffs hereby demand a trial by jury of all issues so triable.

_____/s/ John P. Fenner, Esq._
John P. Fenner Esq
Attorney for Co-Personal Representatives.
Fla. Bar # 762938
2840 NW Boca Raton Blvd., Ste 107
Boca Raton, FL 33431-6634
phone (561) 750-5044
fax (561) 750-1586
email: jfennerlaw@att.net

__/s/ Margaret A. Broz, Esq._
Margaret A. Broz, Esq.
Attorney for Estate & Joe
Fla. Bar #712507
11400 Overseas Highway, Ste 212
Marathon FL 33050

Phone : (305) 743 8440
Fax: : (305) 743 8550
Email: peggy_broz@yahoo.com

**Exhibit A to Complaint**



**EXHIBIT B**

Sponsored by: Burnett

## CITY OF MARATHON, FLORIDA
### RESOLUTION 2008-44

A RESOLUTION OF THE CITY COUNCIL OF MARATHON, FLORIDA, APPROVING SUBJECT TO CONDITIONS A REQUEST TO THE CITY COUNCIL OF THE CITY OF MARATHON BY OVERSEAS VILLAGE HOA, JIGS INVESTMENT, AND THE ESTATE OF JOE ARDOLINO, TO ABANDON A PORTION OF A PUBLIC RIGHT-OF-WAY LOCATED ON OLD STATE ROAD 4A BETWEEN 35TH AND 37TH ST., DESCRIBED AS ADJACENT TO LOTS 2, 3, 4, 5, 9, 10 AND PART OF LOT 11, BLOCK 4, MARATHON BEACH SUBDIVISION, PLAT BOOK 2, PAGE 16, NEAREST MILE MARKER 49, MONROE COUNTY, FLORIDA, AS LEGALLY DESCRIBED IN EXHIBIT "A"; AND PROVIDING FOR AN EFFECTIVE DATE.

WHEREAS, there presently exists a certain public right-of-way within the City of Marathon, Florida, Located on Old State Road 4A between 35th and 37th St., Described as Lots 2, 3, 4, 5, 9, 10 and Part of Lot 11 Block 4, Marathon Beach Subdivision, Plat Book 2, Page 16; and

WHEREAS, The Overseas Village HOA, Jigs Investment, and the Estate of Joe Ardolino (the "Applicants"), have requested that the City of Marathon, Florida (the "City"), in accordance with Section 26-1 of the City Code, abandon the Right-of-Way; and

WHEREAS, the City Council finds that the Right-of-Way is not needed and may be abandoned without adversely affecting the public interest; and

WHEREAS, the Right-of-Way lies wholly within the corporate boundaries of the City; and

WHEREAS, a public hearing to vacate the Right-of-Way was held on July 08, 2008 and the City has determined that no federal, state or county rights-of-way are involved or affected, and that granting the request for abandonment of the Right-of-Way subject to conditions will not be detrimental to the public health, safety and welfare; and

WHEREAS, the City has determined the Applicant meets all of the requirements of Section 26-1 of the City Code for the abandonment of the Right-of-Way.

NOW, THEREFORE, BE IT RESOLVED BY THE CITY COUNCIL OF THE CITY OF MARATHON, FLORIDA, THAT:

Section 1.    The above recitals are true and correct and incorporated herein.

Section 2.    Pursuant to the request by the Applicant to vacate the Right-of-Way, the City releases, vacates, abandons, discontinues, renounces and disclaims all rights of the City and the public in and to the Right-of-Way, as legally described on Exhibit "A", subject to the following conditions:

1. The applicants will convey a utility easement (in a form acceptable to the City Attorney) to the City and all utilities on and under all of the abandoned right-of-way.
2. The applicants will convey a right of access to the remaining right-of-way "in-holding" which will be created as a result of this abandonment.
3. The applicants will grant an easement recognizing the existing sewer line from the Stuffed Pig restaurant until it is replaced by city sewer.
4. If the adjacent buildings that are presently non conforming are substantially damaged or destroyed, the replacement buildings will comply with the then lawful set backs, subject of course, to the sewer easement, if applicable.

Section 3.    The City Clerk shall forward a certified copy this Resolution to the Applicant, who shall be responsible for all costs incurred in recording this instrument in the public records of Monroe County, Florida. The Applicant shall provide the City evidence of the recording of this Resolution and the Easement within thirty (30) days of the effective date of this Resolution.

Section 4.    The City reserves all rights to itself for the placement, operation and maintenance of all necessary City roads, structures and utilities including, but not limited to, stormwater and wastewater improvements and appurtenant facilities above and below that portion of the Right-of-Way not vacated by this Resolution.

Section 5.    **Effective Date.**  This Resolution shall become effective immediately upon its adoption.

PASSED AND APPROVED by the City Council of the City of Marathon, Florida, this 28th day of October, 2008.

THE CITY OF MARATHON, FLORIDA

Edward P. Worthington, Mayor

AYES:      Bull, Vasil, Worthington
NOES:      Tempest
ABSENT:    Cinque
ABSTAIN:   None

ATTEST:

_Diane Clavier_

Diane Clavier, City Clerk

(City Seal)

APPROVED AS TO FORM AND LEGALITY FOR THE USE AND RELIANCE OF THE CITY OF MARATHON, FLORIDA ONLY:

Jimmy Morales, City Attorney

Exhibit A

Adjacent to Lots 2, 3, 4, 5, 9, 10 and part of Lot 11, Block 4, Marathon Beach Subdivision, Plat Book 2, Page 16, Nearest Mile Marker 49, Monroe County, Florida

EXHIBIT C

**Sponsored by:** Puto
**Introduction Date:** September 18, 2006
**Public Hearing Dates:** October 10, 2006
October 24, 2006
**Enactment date:** October 24, 2006

## CITY OF MARATHON, FLORIDA
## ORDINANCE 2006-25

**AN ORDINANCE OF THE CITY OF MARATHON, FLORIDA, CREATING SECTION 19-219 PROHIBITED AREAS FOR SALES OF ALCOHOLIC BEVERAGES, PROVIDING FOR THE REPEAL OF ALL CODE PROVISIONS AND ORDINANCES INCONSISTENT WITH THIS ORDINANCE, PROVIDING FOR SEVERABILITY; PROVIDING FOR THE INCLUSION IN THE CODE; PROVIDING FOR THE TRANSMITTAL OF THIS ORDINANCE TO THE STATE DEPARTMENT OF COMMUNITY AFFAIRS; AND PROVIDING FOR AN EFFECTIVE DATE UPON THE APPROVAL OF THIS ORDINANCE BY THE DEPARTMENT IN ACCORDANCE WITH STATE LAW**

**WHEREAS,** the City of Marathon (the "City") has the authority to enact ordinances that promote the health, safety and welfare of the citizens and residents of the City; and

**WHEREAS,** pursuant to Section 19-218 of the City Code, the City currently regulates the sale of alcoholic beverages in the City by requiring an alcoholic beverage use permit for any person or entity wishing to sell alcoholic beverages in the City; and

**WHEREAS,** the City Council is concerned with the effect that a proliferation of package liquor stores would have on the health, safety and welfare of the community and on the character of the neighborhoods in which such stores would be located; and

**WHEREAS,** the City Council finds the adoption of this Ordinance is in the best interest of the City and complies with applicable State laws and rules.

**NOW, THEREFORE, BE IT ORDAINED BY THE CITY COUNCIL OF THE CITY OF MARATHON, FLORIDA, AS FOLLOWS:**

**Section 1.** The foregoing recitals are incorporated herein by reference.

**Section 2.** Section 19-219 of the City Code is hereby created to read as follows:

**Sec. 19-219. Prohibited areas for sale of alcoholic beverages**

(1) **Generally.**

(a) *Definition.* In this Section, unless the context requires otherwise, "package sale vendor" means a person licensed pursuant to Chapters 561 through 568, *Florida Statutes*, to sell liquor (as defined in Section 565.01, *Florida Statutes*) as a package sale; however, a package sale vendor does not include: (i) a business operation, in regards to beer and malt beverages (as defined by Section 563.01, *Florida Statutes*) and wine (as defined by Section 564.01, *Florida Statutes*) for consumption off premises; or (ii) any bona fide hotel, motel or motor court in possession of a special license issued in accordance with Section 561.20(2)(a)1, *Florida Statutes*.

(b) *City package sale vendor distance requirements established.* For all of those certain areas of land in the City which lie within one thousand five hundred (1,500) feet of a package sale vendor's place of business as established, located and licensed, no other new or relocated package sale vendor shall be permitted to open and/or start the business of package sales within that distance.

(c) *Package sales within distance requirements restricted.* The purpose of creating the distance requirements mentioned in subsection (1)(b) of this Section is to provide and require that no package sale vendor which is located or proposes to locate in the City of Marathon shall be permitted to operate at a new location within a distance of one thousand five hundred (1,500) feet of the location of any package sale vendor which is both preexisting at the time of the package sale vendor's application to operate at the new location and is located within the City of Marathon.

(d) *Distance requirements not applied to renewal, change in name or ownership, or change in certain licenses.* The distance requirements set forth above in subsections (1)(b) and (1)(c) shall not be applied to the location of an existing package sale vendor when there is:

    (i)    A renewal of an existing license;
    (ii)    A transfer in ownership;
    (iii)    A change in business name; or
    (iv)    A decrease in the numerical designation of a state issued license that is of the same series (type);

provided that the physical location of the package sale vendor establishment does not change. No increase in the numerical designation of a series (type) of state issued license that is of the same series (type) shall be permitted at or for a location (new or existing) except in compliance with the provision hereof.

(e) *Measurement of distances.* The distances provided in this Section shall be measured by following a straight line from the proposed main entrance of a package sale vendor who proposes to operate his place of business and is licensed under Chapters 561 through 568, *Florida Statutes*, to the main entrance of any other package sale vendor who is operating such a business. The package sale vendor seeking a new location must submit a scaled survey drawn by a registered land surveyor attesting to the separation of the uses in question. This requirement may be waived upon the written certification by the Director of Planning that the minimum distance separation has been met.

(f)     *Exemption for on-premises consumption only.*

(1)     In those situations in which the holder of an alcoholic beverage license pursuant to Chapters 561 through 568, *Florida Statutes*, has the ability to use such license for both on- premises and off-premises consumption sales, such licensee may at his option choose to forego off-premises consumption sales under his license for the location of business requested; thus such licensee would be deemed not to be a package sale vendor under this section for such a location and would not be subject to the distance requirements cited in subsections (b) and (c) above. To ensure that the public, safety and welfare are preserved, any licensee choosing to forego package sales for off-premises consumption, and thereupon being deemed not to be a package sale vendor, shall agree as a condition of obtaining his zoning use permit to prominently display at all times within his establishment in the vicinity of the main cash register a sign with letters no smaller than three (3) inches and printed in a legible style which states "No Package Sales."

(2)     Upon any future relocation of such licensee's business in which the distance requirements of subsection (b) above are met, such licensee may resume package sales for off-premises consumption and would not be required to display the aforementioned sign.

(2)     Schools.

(a)     No new or relocated package sale vendor shall be permitted to open and/or start the business of package sales within one thousand five hundred (1,500) feet of an established school.

(b)     Distance from a school shall be measured by following a straight line from the main entrance of the place of business to the nearest point of the school grounds in use as part of the school facilities. The package sale vendor seeking a new location must submit a scaled survey drawn by a registered land surveyor attesting to the separation of the uses in question. This requirement may be waived upon the written certification by the Director of Planning that the minimum distance separation has been met.

(c)     The location of all existing places of business subject to this section shall not in any manner be impaired by this Section, and the distance limitation provided in this Section shall not impair any existing licensed location heretofore issued to and held by any such vendor nor shall such vendor's right of renewal be impaired by this Section; provided, however, that the location of any such existing license shall not be transferred to a new location in violation of this Section.

(d)     *Distance requirements not applied to renewal, change in name or ownership, or change in certain licenses.* The distance requirement set forth above in subsections (2)(a) shall not be applied to the location of an existing vendor when there is:

(i)     A renewal of an existing license;
(ii)    A transfer in ownership;
(iii)   A change in business name; or
(iv)    A any decrease in the numerical designation of a state issued license which is of the same series (type);

provided that the physical location of the vendor establishment does not change. No increase in the series (type) of state issued license shall be permitted at or for a location (new or existing) except in compliance with the provisions hereof.

(3)     Variances.

The Planning Commission is authorized to grant variances to the distance requirements as established by subsections (1) and (2) above where the Commission finds that such variance will not be contrary to the public interests. The application for a variance and the processing and hearing upon the application shall be in accordance with Section 9.5-523 of the City Code. The decision of the Planning Commission may be appealed to the City Council.

Section 3.     The provisions of this Ordinance are declared to be severable and if any section, sentence, clause of phrase of this Ordinance shall for any reason be held to be invalid or unconstitutional, such decision shall not affect the validity of the remaining sections, sentences, clauses, and phrases of this Ordinance but they shall remain in effect, it being the legislative intent that this Ordinance shall stand notwithstanding the invalidity of any part.

Section 4.     The provisions of the City Code and all Ordinances or parts of Ordinances in conflict with the provisions of this Ordinance are hereby repealed.

Section 5.     It is the intention of the City Council and it is hereby ordained that the provisions of this Ordinance shall become and be made a part of the Code of the City of Marathon, Florida, that the sections of the Ordinance may be renumbered or re-lettered to accomplish to such intentions, and that the word "Ordinance" shall be changed to "Section" or other appropriate word.

Section 6.     The provisions of this Ordinance constitute a "land development regulation" as state law defines that term. Accordingly, the City Clerk is authorized and directed to forward a copy of this Ordinance to the State Department of Community Affairs for approval pursuant to Sections 380.05(6) and (11), Florida Statutes.

Section 7.     This Ordinance shall be effective immediately upon approval by the State Department of Community Affairs pursuant to Chapter 380, Florida Statutes.

**ENACTED BY THE CITY COUNCIL OF THE CITY OF MARATHON, FLORIDA**, this 24th day of October, 2006.

THE CITY OF MARATHON, FLORIDA

_Christopher M. Bull_
Christopher M. Bull, Mayor

| | |
|---|---|
| AYES: | Pinkus, Mearns, Tempest, Worthington, Bull |
| NOES: | None |
| ABSENT: | None |
| ABSTAIN: | None |

ATTEST:

_Diane Clavier_
Diane Clavier
City Clerk

**APPROVED AS TO FORM AND LEGALITY FOR THE USE AND RELIANCE OF THE CITY OF MARATHON, FLORIDA ONLY:**

City Attorney

DCA Final Order No.: DCA07-OR-005

## STATE OF FLORIDA
## DEPARTMENT OF COMMUNITY AFFAIRS

In re:  CITY OF MARATHON LAND
DEVELOPMENT REGULATIONS
ADOPTED BY ORDINANCE NO. 2006-25

## FINAL ORDER

The Department of Community Affairs (the "Department") hereby issues its Final Order, pursuant to §§ 380.05(6), *Fla. Stat.*, and § 380.0552(9), *Fla. Stat.* (2006), approving a land development regulation adopted by a local government within the Florida Keys Area of Critical State Concern as set forth below.

### FINDINGS OF FACT

1. The Florida Keys Area is a statutorily designated area of critical state concern, and the City of Marathon is a local government within the Florida Keys Area.

2. On November 13, 2006, the Department received for review City of Marathon Ordinance No. 2006-25 that was adopted by the City of Marathon Board of City Commissioners on October 24, 2006 ("Ord. 2006-25"). Ord. 2006-25 creates Section 19-219, Prohibited Areas for Sales of Alcoholic Beverages, in order to regulate the amount and location of package liquor stores in a manner that preserves and maintains existing community character of the neighborhoods in which such stores would be located, and to benefit the health, safety and welfare of the community.

3. Ord. 2006-25 is consistent with the City's 2010 Comprehensive Plan.

### CONCLUSIONS OF LAW

4. The Department is required to approve or reject land development regulations that are enacted, amended or rescinded by any local government in the Florida Keys Area of Critical State Concern. §§ 380.05(6), *Fla. Stat.*, and § 380.0552(9), *Fla. Stat.* (2006).

5. The City of Marathon is a local government within the Florida Keys Area of Critical State Concern. § 380.0552, *Fla. Stat.* (2006) and Rule 28-29.002 (superseding Chapter 27F-8),

1

*Fla. Admin. Code.*

6. "Land development regulations" include local zoning, subdivision, building and other regulations controlling the development of land. § 380.031(8), *Fla. Stat.* (2006). The regulations adopted by Ord. 2006-25 are land development regulations.

7. All land development regulations enacted, amended or rescinded within an area of critical state concern must be consistent with the Principles for Guiding Development (the "Principles") as set forth in § 380.0552(7), *Fla. Stat. See Rathkamp v. Department of Community Affairs,* 21 F.A.L.R. 1902 (Dec. 4, 1998), *aff'd,* 740 So. 2d 1209 (Fla. 3d DCA 1999). The Principles are construed as a whole and no specific provision is construed or applied in isolation from the other provisions.

8. Ord. 2006-25 promotes and furthers the following Principles:

> (a) To strengthen local government capabilities for managing land use and development so that local government is able to achieve these objectives without the continuation of the area of critical state concern designation.
>
> (l) To protect the public health, safety and welfare of the citizens of the Florida Keys and maintain the Florida Keys as a unique resource.

9. Ord. 2006-25 is not inconsistent with the remaining Principles. Ord. 2006-25 is consistent with the Principles for Guiding Development as a whole.

WHEREFORE, IT IS ORDERED that Ord. 2006-25 is found to be consistent with the Principles for Guiding Development of the Florida Keys Area of Critical State Concern, and is hereby APPROVED.

DCA Final Order No.: DCA07-OR-005

This Order becomes effective 21 days after publication in the Florida Administrative Weekly unless a petition is filed as described below.

DONE AND ORDERED in Tallahassee, Florida.

*Thomas G. Pelham*

THOMAS G. PELHAM
Secretary
Department of Community Affairs
2555 Shumard Oak Boulevard
Tallahassee, Florida 32399-2100

## NOTICE OF ADMINISTRATIVE RIGHTS

ANY PERSON WHOSE SUBSTANTIAL INTERESTS ARE AFFECTED BY THIS ORDER HAS THE OPPORTUNITY FOR AN ADMINISTRATIVE PROCEEDING PURSUANT TO SECTION 120.569, FLORIDA STATUTES, REGARDING THE AGENCY'S ACTION. DEPENDING UPON WHETHER YOU ALLEGE ANY DISPUTED ISSUE OF MATERIAL FACT IN YOUR PETITION REQUESTING AN ADMINISTRATIVE PROCEEDING, YOU ARE ENTITLED TO EITHER AN INFORMAL PROCEEDING OR A FORMAL HEARING.

IF YOUR PETITION FOR HEARING DOES NOT ALLEGE ANY DISPUTED ISSUE OF MATERIAL FACT CONTAINED IN THE DEPARTMENT'S ACTION, THEN THE ADMINISTRATIVE PROCEEDING WILL BE AN INFORMAL ONE, CONDUCTED PURSUANT TO SECTIONS 120.569 AND 120.57(2) FLORIDA STATUTES, AND CHAPTER 28-106, PARTS I AND III, FLORIDA ADMINISTRATIVE CODE. IN AN INFORMAL ADMINISTRATIVE PROCEEDING, YOU MAY BE REPRESENTED BY COUNSEL OR BY A QUALIFIED REPRESENTATIVE, AND YOU MAY PRESENT WRITTEN OR ORAL EVIDENCE IN OPPOSITION TO THE DEPARTMENT'S ACTION OR REFUSAL TO ACT; OR YOU MAY EXERCISE THE OPTION TO PRESENT A WRITTEN STATEMENT CHALLENGING THE GROUNDS UPON WHICH THE DEPARTMENT HAS CHOSEN TO JUSTIFY ITS ACTION OR INACTION.

IF YOU DISPUTE ANY ISSUE OF MATERIAL FACT STATED IN THE AGENCY ACTION, THEN YOU MAY FILE A PETITION REQUESTING A FORMAL ADMINISTRATIVE HEARING BEFORE AN ADMINISTRATIVE LAW JUDGE OF THE DIVISION OF ADMINISTRATIVE HEARINGS, PURSUANT TO SECTIONS 120.569 AND 120.57(1), FLORIDA STATUTES, AND CHAPTER 28-106, PARTS I AND II, FLORIDA ADMINISTRATIVE CODE. AT A FORMAL ADMINISTRATIVE HEARING, YOU MAY BE REPRESENTED BY COUNSEL OR OTHER QUALIFIED REPRESENTATIVE, AND YOU WILL HAVE THE OPPORTUNITY TO PRESENT EVIDENCE AND ARGUMENT ON ALL THE ISSUES INVOLVED, TO CONDUCT CROSS-EXAMINATION AND SUBMIT

DCA Final Order No.: DCA07-OR-005

REBUTTAL EVIDENCE, TO SUBMIT PROPOSED FINDINGS OF FACT AND ORDERS, AND TO FILE EXCEPTIONS TO ANY RECOMMENDED ORDER.

IF YOU DESIRE EITHER AN INFORMAL PROCEEDING OR A FORMAL HEARING, YOU MUST FILE WITH THE AGENCY CLERK OF THE DEPARTMENT OF COMMUNITY AFFAIRS A WRITTEN PLEADING ENTITLED, "PETITION FOR ADMINISTRATIVE PROCEEDINGS" WITHIN 21 CALENDAR DAYS OF PUBLICATION OF THIS NOTICE. A PETITION IS FILED WHEN IT IS RECEIVED BY THE AGENCY CLERK, IN THE DEPARTMENT'S OFFICE OF GENERAL COUNSEL, 2555 SHUMARD OAK BOULEVARD, TALLAHASSEE, FLORIDA 32399-2100.

THE PETITION MUST MEET THE FILING REQUIREMENTS IN RULE 28-106.104(2), FLORIDA ADMINISTRATIVE CODE. IF AN INFORMAL PROCEEDING IS REQUESTED, THEN THE PETITION SHALL BE SUBMITTED IN ACCORDANCE WITH RULE 28-106.301, FLORIDA ADMINISTRATIVE CODE. IF A FORMAL HEARING IS REQUESTED, THEN THE PETITION SHALL BE SUBMITTED IN ACCORDANCE WITH RULE 28-106.201(2), FLORIDA ADMINISTRATIVE CODE.

A PERSON WHO HAS FILED A PETITION MAY REQUEST MEDIATION. A REQUEST FOR MEDIATION MUST INCLUDE THE INFORMATION REQUIRED BY RULE 28-106.402, FLORIDA ADMINISTRATIVE CODE. CHOOSING MEDIATION DOES NOT AFFECT THE RIGHT TO AN ADMINISTRATIVE HEARING.

YOU WAIVE THE RIGHT TO AN INFORMAL ADMINISTRATIVE PROCEEDING OR A FORMAL HEARING IF YOU DO NOT FILE A PETITION WITH THE AGENCY CLERK WITHIN 21 DAYS OF PUBLICATION OF THIS FINAL ORDER.

## CERTIFICATE OF FILING AND SERVICE

I HEREBY CERTIFY that the original of the foregoing Final Order has been filed with the undersigned designated Agency Clerk, and that true and correct copies have been furnished to the persons listed below by the method indicated this _____ day of January, 2007.

Paula Ford, Agency Clerk

By U.S. Mail:

Honorable Christopher M. Bull, Mayor
City of Marathon
10054-55 Overseas Highway
Marathon, Florida 33050

4

DCA Final Order No.: DCA07-OR-005

Diane Clavier, City Clerk
City of Marathon
10045-55 Overseas Highway
Marathon, Florida 33050

Mike Puto
Acting City Manager
City of Marathon
10054-55 Overseas Highway
Marathon, Florida 33050

John Herin, Esq.
Stearns Weaver Miller Weissler
Alhadeff & Sitterson, P.A.
Suite 2200 Museum Tower
150 West Flagler Street
Miami, Florida 33130

By Hand Delivery or Interagency Mail:

Clark Turner, ACSC Administrator
Richard E. Shine, Assistant General Counsel

5

AMERICAN
~~...~~
OR CHRISTIES                                Exhibit D

# Addendum to Contract
**FLORIDA ASSOCIATION OF REALTORS®**

Addendum No.        2    to the Contract between          Joseph Ardolino Estate              ("Seller")

and                          John J. Foster                          ("Buyer") concerning the Property described as:

Lot 4, Square 4 and adj. portion of old state road 4 A and          lots 8,9,10 and 11, Square 4, Marathon Beach, PB 2/18

(the "Contract"). Buyer and Seller make the following terms and conditions part of the Contract.

1. Buyer and Seller agree Purchase Price will be $750,000
2. Buyer agrees that the due diligence or inspection period is over and  buyer is satisfied except that the seller must procure agreement from the City that the premises may be used for a bar and package store, and so notify buyer in writing within 90 days from date of signing this addendum.  If this letter is not obtained within 90 days, either party may cancel this agreement.
3. The financing contingency will be increased to 45 days and will begin upon notification that the City has approved the premises as a bar and package store.
4. Closing will take place 90 days from notification of the City's approval of the bar and package store being allowed on the premises in writing.
5. Property shall be delivered by the seller at closing in a "broom clean" condition with all trash removed.
6. Seller shall pay the initial sewer system development fee in full at closing and the buyer will be responsible for hookup fees and any other costs associated with that hookup.
7. The seller will be responsible for the real estate commissions per a prior written listing agreement.
8. All tenants in the main commercial building (downstairs and upstairs) will vacate the premise prior to closing.  The other tenants will be allowed to remain and all rents to be  prorated in closing statement.
9. This addendum must be agreed  to in writing by both Buyer and Seller by July 8th, 2011 (Friday) or the buyer will seek the return of his escrow deposit. By signing below, Buyer and Seller make these changes a part of the original contract dated  June 10th, 2011.

Date: _____         Buyer: _____
                                                        John J. Foster

Date: _____         Buyer: _____

Date: 7/8/11               Seller: _____
                                            Richard E. Warner, Co-Personal Rep

Date: _____         Seller: _____
                                            John Parents, PA (Co-Personal Rep

This form is available for use by the entire real estate industry and is not intended to identify the user as a REALTOR. REALTOR is a registered collective membership mark which may be used only by real estate licensees who are members of the NATIONAL ASSOCIATION OF REALTORS and who subscribe to its Code of Ethics.

The copyright laws of the United States (17 U.S. Code) forbid the unauthorized reproduction of this form by any means including facsimile or computerized forms.

ACSP-2a   Rev. 6/04    ©1994 Florida Association of REALTORS     All Rights Reserved

Form generated by .....

EXHIBIT E

 **CITY OF MARATHON, FLORIDA**

9805 Overseas Highway, Marathon, Florida 33050
Phone: (305) 289-4111 Fax: (305) 743-3667
garrettg@ci.marathon.fl.us

27 July 2011

Mr. Franklin D. Greenman
Greenman & Manz
Gulfside Village, Suite 40
5800 Overseas Highway
Marathon, Florida 33050

Dear Frank:

This letter is in response to your letter dated July 11, 2011 concerning the property where the Overseas Lounge and Liquor Store Corp., Inc. operated (the "Property").

As you acknowledge in your letter, the Property is located within 1500 feet of a school. Consequently, when in operation, the Property's use as a bar/tavern and package store was a nonconforming use pursuant to section 104.05 of the City's Land Development Regulations (LDR's).

It is our understanding that the Overseas Lounge has ceased operation for a period of over eighteen months. As a result, pursuant to section 108.10 of the LDR's, the Property lost its nonconforming use as a package store.

In the event your client or a subsequent purchaser of the Property wishes to reestablish the previous package store use, a variance for such a use must be obtained pursuant to section 104.05 of the LDR's. Additionally, in order to be clear, the bar/tavern use would merely require an alcoholic beverage license and a conditional use, not a variance.

If you require any additional information, please feel free to contact me.

Sincerely,

George Garrett, Planning Director

cc   Joe Jimenez, Esq, Assistant City Attorney

Exhibit F

IN THE CIRCUIT COURT OF THE 16TH
JUDICIAL CIRCUIT OF THE STATE OF
FLORIDA IN AND FOR MONROE COUNTY

APPELLATE DIVISION

CASE NO: 2012-CA-10-M

RICHARD E. WARNER and
JOHN PARENTE, as Co-Personal
Representatives of the Estate of
Joseph Ardolino, II,

        Plaintiffs

Vs.

CITY OF MARATHON, a political
Subdivision of the State of Florida,

        Defendant

_____/

## SECOND AMENDED[1] ORDER GRANTING CERTIORARI

PER CURIAM:

On Defendant's Motion for Clarification, the court hereby withdraws the prior order granting certiorari, and enters the following Amended Order:

Petitioners RICHARD E. WARNER and JOHN PARENTE, as Co-Personal Representatives of the Estate of Joseph Ardolino, II, seek certiorari from this court regarding a land use decision by the Marathon City Council. The court, having reviewed the pleadings, all exhibits submitted for consideration, and having considered the argument of counsel, hereby finds and Orders as follows:

_____

[1] Amended to correct scrivener's error in para. 2, substituting "Ordinance" for "Resolution."

1. The record reflects that the Estate of Joseph Ardolino, II, owns real property located at 3574 Overseas Highway, Marathon, Florida, which was used for many years as a liquor store.

2. The City of Marathon, by Ordinance 2007-014 and/or 2007-003, added a 1,500 foot "package store prohibition" requiring that all liquor stores be at least that distant from schools within the City of Marathon. This provision only applied to one liquor store within the city, the "Overseas Package Store", which is now the property of the subject estate.

3. Section 108.09 of the Marathon City Code requires and mandates individual notice to landowners regarding land use changes, so any non-conforming use can be registered as such:

   "The use of any building, structure or land that becomes non-conforming because of the LDR's or subsequent amendments, shall comply with the LDR's or be approved by the Director as a continuing non-conforming use. The non-conforming uses in the zoning district or the adopted land use designation shall not be changed to another non-conforming use.

   a. Notification: The Department will provide individual notice by mail to all landowners of record according to the most recent listing of the Property Appraiser of Monroe County of the effective date of the LDR's or any amendment and requirement to register non-conforming uses."

4. The record is clear that (a) the property was in use as a liquor store in 2007, when the ordinance creating the distance prohibition was enacted, and (b) the City of Marathon failed to notify any property owner pursuant to Section 108.09, when it passed the distance requirement for package stores in 2007. The City's failure to accord the property owner the required notice thus foreclosed the

opportunity to register the then-existing use as a grandfathered non-conforming use.

5. Therefore, Marathon LDR Section 104.05(6)(2), regarding the 1,500 foot package store distance limitations from schools, may not be lawfully applied to Plaintiffs' property until the notice requirement has been complied with, which will allow Plaintiffs an opportunity to register the non-conforming use as it existed in 2007, at the time the Ordinance was enacted, and when the City failed to give the required notice.

6. The City's finding in Resolution 2011-177 that the Overseas Package Store became a "non-conforming use" without having given notice of, and opportunity to seek grandfathering to the landowner through the registration process, fails to comply with the essential requirements of law.

7. Accordingly, Resolution 2011-177, filed on December 16, 2011, is hereby QUASHED by this court, and this matter is REMANDED to the City of Marathon for further proceedings, consistent with this Opinion.

DONE and ORDERED at Key West, Monroe County, Florida, this 29th day of June, 2012.

CONFIRMED

JUN 2 9 2012

DAVID J. AUDLIN, JR.
CHIEF JUDGE

DAVID J. AUDLIN, JUDGE
CHIEF JUDGE

cc:   Richard E. Warner, Esq.
      Jose M. Jimenez, Esq.

Filing # 17759509 Electronically Filed 09/02/2014 04:38:12 PM

IN THE CIRCUIT COURT OF THE
16TH JUDICIAL CIRCUIT IN AND FOR
MONROE COUNTY, FLORIDA

CASE NO.:    14-CA-185-M

RICHARD E. WARNER &
JOHN W. PARENTE, as Co-Personal
Representatives of the Estate of Joseph
Ardolino, II & JOSEPH E. ARDOLINO,
Individually,

      Plaintiffs,

v.

CITY OF MARATHON, a political
subdivision of the State of Florida,
MICHAEL CINQUE, individually and
as a City of Marathon official, &
RALPH LUCIGNANO, individually and
as a City of Marathon official,

      Defendants.

_____/

## DEFENDANT, CITY OF MARATHON'S, UNOPPOSED MOTION FOR EXTENSION OF TIME

Defendant, CITY OF MARATHON ("City"), by and through its undersigned attorneys and pursuant to the Florida Rules of Civil Procedure, requests entry of an order extending the time for it to respond until twenty (20) days after the Plaintiffs file their Second Amended Complaint and in support would state:

    1.     On August 14, 2014, the Plaintiffs served their First Amended Complaint on the City.

    2.     Under the applicable rules of civil procedure, the City's response to the First Amended Complaint is due on Wednesday, September 3, 2014.

    3.     The Plaintiffs have advised that they intend to file a Second Amended Complaint.

4.     The City therefore request entry of an order extending the time for it to respond until twenty (20) days after the Plaintiffs file their Second Amended Complaint.

5.     Pursuant to Florida Rule of Civil Procedure 1.090(b), the Court may extend the time for a party to respond "for cause" at any time in its discretion.

6.     The City submits that it would be an inefficient use of resources for the City to prepare a response to the First Amended Complaint where the Plaintiffs have advised that they intend to file a Second Amended Complaint.

7.     The City certifies that this Motion is not being made for any improper purpose or to delay and will not impact any of the deadlines of the Court.

8.     The Plaintiffs will not be prejudiced by the requested extension of time.

9.     The undersigned (Hudson C. Gill, Esquire) conferred with the attorney for the Plaintiffs (John Fenner, Esquire) regarding the relief sought in this motion, and can represent that the Plaintiffs do not object to the requested extension of time.

WHEREFORE, Defendant, CITY OF MARATHON, requests an extension of time to respond until twenty (20) days after the Plaintiffs file their Second Amended Complaint, together with such additional relief the Court deems just and proper.

Warner, et al. v. City of Marathon, et al.
Case No. 14 CA 185M

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the above and foregoing was SERVED and FILED via FL E-Portal to: John P. Fenner, Esq., (jfennerlaw@att.net) 2840 NW Boca Raton Blvd., Suite 107, Boca Raton, FL 33431, and Margaret A. Broz, Esq. (peggy_broz@yahoo.com) 11400 Overseas Highway, Suite 212, Marathon, FL 33050, on this 2nd day of Sept., 2014.

JEFFREY L. HOCHMAN
FLA. BAR NO. 902098
HUDSON C. GILL
FLA. BAR NO. 15274
Attorneys for Defendant City of Marathon
JOHNSON, ANSELMO, MURDOCH,
BURKE, PIPER & HOCHMAN, PA
2455 E. Sunrise Blvd., Suite 1000
Fort Lauderdale, FL 33304
Tel: 954-463-0100
Fax: 954-463-2444
Hochman@jambg.com
Ericksen@jambg.com